IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JORDAN NORRIS, ) | |
|     PLAINTIFF ) | |
| ) | |
| vs. ) | |
| ) | CASE NUMBER _____ |
| MARK BRYANT, ) | |
| JOSH MARRIOTT, and ) | |
| JEFF KEY, ) | |
|     DEFENDANTS. ) | |

## COMPLAINT

Comes now Plaintiff Jordan Norris, by and through his attorneys, and for cause of action against the Defendants would respectfully state as follows:

### I. JURISDICTION AND VENUE

1. This action is brought against the Defendants pursuant to 42 U.S.C. § 1983 for deprivation of civil rights secured by the Fourteenth Amendments to the United States Constitution.

2. Jurisdiction is founded upon 28 U.S.C. § 1331, § 1343(a)(3)(4), and § 1367(a). This Court has jurisdiction over the Plaintiff's claims of violation of civil rights under 42 U.S.C. § 1983. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the factual acts and omissions which give rise to this cause of action occurred within this district and within one year of the filing of this complaint and this Court otherwise has jurisdiction.

### II. PARTIES

3. The Plaintiff, Jordan Norris, is a citizen and resident of the United States, domiciled in Cheatham County, Tennessee.

1

4. Defendant Mark Bryant is employed in Cheatham County, Tennessee and was at all times material to the allegations in this Complaint acting in his capacity as a Cheatham County deputy sheriff and was acting under color of state law by virtue of his authority as a law enforcement officer. He is sued in his individual capacity.

5. Defendant Josh Marriott is employed in Cheatham County, Tennessee and was at all times material to the allegations in this Complaint acting in his capacity as a Cheatham County deputy sheriff and was acting under color of state law by virtue of his authority as a law enforcement officer. He is sued in his individual capacity.

6. Defendant Jeff Key is employed in Cheatham County, Tennessee and was at all times material to the allegations in this Complaint acting in his capacity as a Cheatham County deputy sheriff and was acting under color of state law by virtue of his authority as a law enforcement officer. He is sued in his individual capacity.

### III. FACTUAL ALLEGATIONS

7. On November 3, 2016, Jordan Norris was arrested for non-violent misdemeanor offenses by members of the Cheatham County Sheriff's Office and detained in the Cheatham County Jail. The charges were later resolved in a deferred adjudication pursuant to Tenn. Code Ann. § 40-35-313.

8. On November 5, 2016 at approximately 7:00 p.m., Plaintiff Norris was in the custody of the Cheatham County Sherriff's Office in the Cheatham County Jail. He began suffering a mental health episode and was banging his own head against the door. For his own safety, Officers decided to extract him from the cell and placed him in a restraint chair. Officers of the Cheatham County Sheriff's Office attempted to stabilize Plaintiff Norris but were unsuccessful.

9. Due to his mental health episode, Defendant Bryant ordered that Plaintiff Norris be placed on "suicide watch" and then contacted a nurse and Mobile Crisis Services for treatment.

10. At approximately 8:00 p.m., Plaintiff Norris was on "suicide watch" in the jail. His arms, chest, waist, and legs were restrained by a restraint chair.

11. While Plaintiff Norris was restrained in the restraint chair, Defendant Marriott repeatedly held and squeezed Plaintiff Norris by the face, neck, and shoulders and applied pressure point techniques intended to cause pain.

12. While Plaintiff Norris was restrained in the restraint chair, Defendant Key and Defendant Bryant held down Plaintiff Norris's right arm against the chair. Another Officer, Caitlin Johnson, was in the immediate vicinity and able to provide assistance if required.



13. While Plaintiff Norris was in the restraint chair and physically restrained by the chair and multiple Officers, Defendant Bryant shocked Plaintiff Norris with a Taser device four times totaling approximately fifty seconds on his stomach and legs.



14. The taser shocks by Defendant Bryant were recorded by an overhead surveillance video camera and by a camera on the Taser itself.

15. While tasing Plaintiff Norris, Defendant Bryant stated: "I'll keep on doing that until I run out of batteries."

16. Defendant Bryant's statement evidence that he was acting in a sadistic and malicious nature in repeatedly tasing Plaintiff Norris, such that the force was unreasonable.

17. Defendant Bryant instructed Plaintiff Norris to "stop resisting" while Defendant Bryant was actually still tasing Plaintiff Norris and while Plaintiff Norris was restrained in the restraint chair.

18. Audio on the Taser camera includes an unidentified person laughing while Defendant Bryant repeatedly tased Plaintiff Norris. Another identified person can be heard remarking, "Goddamn that kid is being lit up!"

4

19. Defendant Bryant's repeated and prolonged use of the Taser against Plaintiff Norris while Plaintiff Norris was restrained and suffering a mental health episode was objectively unreasonable, unnecessary, excessive, and without a legitimate law enforcement purpose.

20. While Defendant Bryant repeatedly tased Plaintiff Norris, Defendants Key and Marriott held down Plaintiff Norris, giving them full opportunity to observe Defendant Bryant's use of force and the ability to prevent it.

21. Defendants Key and Marriott knew or should have known that Defendant Bryant was using excessive force in repeatedly tasing Plaintiff Norris without proper justification.

22. By holding down Plaintiff Norris while he was being tased by Defendant Bryant, Defendants Key and Marriott acted in conspiracy among themselves and with Defendant Bryant to inflict excessive force upon Plaintiff Norris in a manner that was unnecessary, excessive, and without a legitimate law enforcement purpose.

23. At approximately 10:20 p.m. on November 5, 2017, Plaintiff Norris remained fully restrained in the restraint chair, was surrounded by several Officers, and was still on suicide watch.

24. Notwithstanding the fact that Plaintiff Norris was fully restrained in the restraint chair, Defendant Bryant again repeatedly stunned Plaintiff Norris with a Taser device purportedly "to gain compliance" approximately five times for a total of approximately fifty seconds despite the fact that Plaintiff Norris was not actively resisting any lawful command.

25. Two minutes later, Defendant Bryant tased Plaintiff Norris again for approximately ten seconds despite the fact that Plaintiff Norris remained fully restrained any was not actively resisting any lawful command.

26. Defendant Bryant's use of the Taser against Plaintiff Norris was objectively unreasonable, unnecessary, excessive, and without a legitimate law enforcement purpose.

27. After being repeatedly Tased by Defendant Bryant, Plaintiff Norris was transported to Centennial Medical Center in Ashland City, TN for medical treatment.

28. Plaintiff was later taken to the Middle Tennessee Mental Health Institute (MTMHI) for several days for mental health treatment, where he was stabilized and discharged back to the jail.

29. When Plaintiff Norris bonded out of jail on November 16, 2017, he had approximately forty pairs of Taser burns throughout his body, many of which are shown below:



6



30. Upon leaving jail, Plaintiff Norris showed his Taser burns to his uncle, who was horrified by nature and extent of the injuries, and encouraged Plaintiff Norris to seek legal representation and request records and videos from the Cheatham County Sheriff's Office.

31. Plaintiff Norris and his family were distraught to see the video clips of Plaintiff Norris being repeatedly tased while fully restrained, without any apparent justification.

32. Most of the Taser burns sustained by Plaintiff Norris are not accounted for by the Use of Force Reports and video clips received from the Cheatham County Sheriff's Office, raising further questions and creating a reasonable belief that Plaintiff Norris was also repeatedly tased on other occasions without proper justification.

33. All Taser shocks described above caused extreme pain and suffering to Plaintiff Norris.

7

34. Plaintiff continues to suffer injury from the Taser uses and uses of physical restraint described above, including but not limited to scarring on his skin, seizures, nerve problems in his hands, mental anguish, panic attacks, memory problems, and back pain.

35. The allegations stated above are not mere conclusory statements but are based upon reports and videos Plaintiff has obtained from the Cheatham County Sheriff's Office. Plaintiff is filing a Motion along with this Complaint seeking to file a CD containing these videos to be considered as Exhibits to this Complaint.

## COUNT 1: EXCESSIVE FORCE

36. Plaintiff re-alleges and incorporates all paragraphs in this Complaint as if expressly stated herein.

37. Defendant Bryant's multiple and prolonged uses of the Taser against Plaintiff Norris while he was restrained and not actively resisting constitutes an objectively unreasonable, unnecessary, and excessive use of force that lacked a legitimate law enforcement purpose.

38. Defendant Marriott's use of pressure point techniques and other force on Plaintiff Norris's head, face, and neck with Plaintiff Norris was restrained, not actively resisting, and suffering from mental health issues known to Defendant Marriott constitutes an objectively unreasonable, unnecessary, and excessive use of force that lacked a legitimate law enforcement purpose.

39. Defendants Marriott and Key conspired with and acted jointly with Defendant Bryant in tasing Plaintiff Norris by holding him down and failing to intervene in a manner that constitutes an objectively unreasonable, unnecessary, and excessive use of force that lacked a legitimate law enforcement purpose.

40. Defendants acted under color of law to deprive Plaintiff Norris of his right to be free of excessive force that amounts to punishment pursuant to the Fourteenth Amendment to the Constitution of the United States and by 42 U.S.C. §§ 1983 and 1988.

41. Plaintiff Norris's right to be free from excessive force in the manner described in this Complaint was clearly established at the time the force was used.

42. At all times at which Defendant Bryant tased Plaintiff Norris, Plaintiff Norris did not pose a safety threat, was not a flight risk, was not resisting, and did not use or threaten to use force against officers.

43. At all times at which Defendant Bryant tased Plaintiff Norris, Plaintiff Norris was restrained by other officers and physical restraints, and on many occasions had been incapacitated by prior tasings and was thus unable to resist.

44. There was no legitimate penological justification for Defendant Bryant to tase Plaintiff while he was fully restraint and complaint.

45. Defendant Bryant's repeated and prolonged use of the Taser against Plaintiff Norris while Plaintiff Norris was fully restrained amounts to torture.

46. The Defendants' acts and omissions described above lacked a legitimate law enforcement purpose and were done primarily to impose punishment.

47. Defendants failed to provide sufficient warning to Plaintiff that a Taser would be used against him before employing said Taser.

48. To the extent Plaintiff may have been noncompliant or combative to any degree whatsoever, such behavior was involuntarily caused by significant mental health issues of which Defendants knew or should have known, such that tasing Plaintiff constituted unnecessary and excessive force.

9

Case 3:17-cv-01067   Document 1   Filed 07/21/17   Page 9 of 13 PageID #: 9

49. As a direct and proximate result of the intentional, willful and/or recklessly indifferent acts of the Defendants, Plaintiff has suffered and sustained severe mental and physical pain and suffering and injury.

50. Plaintiff is entitled to compensation for the constitutional harms that the Defendants inflicted upon him including personal injury, loss of liberty, and violation of his constitutional rights.

51. The above-described deprivations of Plaintiff's constitutional rights are a direct and proximate result of the actions and omissions of the Defendants.

52. All Defendants are jointly and severally liable for the tasings by Defendant Bryant because they acted jointly and in conspiracy with one another to effect the tasings which constituted excessive force

53. Defendants purposefully and/or knowingly used objectively unreasonable force against Plaintiff.

54. Defendants knew or should have known that the use of force applied against Plaintiff was objectively unreasonable

55. As a direct and proximate result of the violation of his constitutional rights by the Defendants, Plaintiff suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C. § 1983.

56. The actions and omissions of the Defendants complained of herein were unlawful, conscious shocking and unconstitutional and performed maliciously, recklessly, fraudulently, sadistically, retaliatory, intentionally, willfully, wantonly and in such a manner as to entitle the Plaintiff to an award of punitive damages.

## COUNT 2: FAILURE TO PROTECT

57. Plaintiff re-alleges and incorporates all paragraphs in this Complaint as if expressly stated herein.

58. Defendants Key and Marriott observed or had reason to know that excessive force would be or was being used, and had both the opportunity and the means to prevent the harm from occurring because they held down Plaintiff Norris while he was being tased by Defendant Bryant.

59. There was sufficient time during and between tasings by Defendant Bryant for Defendants Key and Marriott to stop Defendant Bryant from continuing to tase Plaintiff Norris, yet Defendants Key and Marriott failed to take any action to stop Defendant Bryant and in fact assisted Defendant Bryant by holding down Plaintiff Norris during that time.

60. Defendants Key and Marriott are liable for failing to protect Plaintiff Norris from Defendant Bryant's excessive and unnecessary tasings because they actively participated in the tasings by holding down Plaintiff Norris.

61. Defendants Key and Marriott are liable for failing to protect Plaintiff Norris from Defendant Bryant's excessive and unnecessary tasings because they owed Plaintiff Norris a duty of protection against such use of excessive force.

62. As a direct and proximate result of the intentional, willful and/or recklessly indifferent acts of the Defendants, Plaintiff has suffered and sustained severe mental and physical pain and suffering and injury.

63. Plaintiff is entitled to compensation for the constitutional harms that the Defendants inflicted upon him including personal injury, loss of liberty, and violation of his constitutional rights.

64. The above-described deprivations of Plaintiff's constitutional rights are a direct and proximate result of the actions and omissions of the Defendants.

65. All Defendants are jointly and severally liable for the tasings by Defendant Bryant because they acted jointly and in conspiracy with one another to effect the tasings which constituted excessive force

66. Defendants Key and Marriott knew or should have known that their failure to protect Defendant Norris from such uses of force was objectively unreasonable.

67. As a direct and proximate result of the violation of his constitutional rights by the Defendants, Plaintiff suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C. § 1983.

68. The actions and omissions of the Defendants complained of herein were unlawful, conscious shocking and unconstitutional and performed maliciously, recklessly, fraudulently, sadistically, retaliatory, intentionally, willfully, wantonly and in such a manner as to entitle the Plaintiff to an award of punitive damages.

## PRAYERS FOR RELIEF

1. That process issued to the Defendants and that they be required to answer in the time required by law.

2. That judgment be rendered in favor of the Plaintiff and against the Defendants on all causes of action asserted herein.

3. That this Court allow Plaintiff to file a CD containing videos of the incidents described herein to be considered as an Exhibit to this Complaint.

4. That Plaintiff be awarded those damages to which he may appear that he is entitled by proof submitted in this case for his physical and mental pain and suffering both past

12

Case 3:17-cv-01067   Document 1   Filed 07/21/17   Page 12 of 13 PageID #: 12

and future, loss of enjoyment of life, and the violation of his rights guaranteed to him by the Fourteenth Amendments to the Constitution of the United States.

5. That punitive damages be assessed against the Defendants.

6. That the Plaintiff be awarded reasonable expenses including reasonable attorneys fees and expert fees and discretionary costs pursuant to 42 U.S.C. § 1988 (b) and (c).

7. That Defendants be held jointly and severally liable for all damages.

8. That the Plaintiff receive any other further and general relief to which it may appear that he is entitled.

9. That a jury of twelve (12) is demanded.

Respectfully submitted,

**/s Benjamin K. Raybin**
**David J. Weissman (BPR #25188)**
**Benjamin K. Raybin (BPR #29350)**
RAYBIN & WEISSMAN, P.C.
424 Church Street, Suite 2120
Nashville, Tennessee 37219
(615) 256-6666
(615) 254-4254- fax
DWeissman@NashvilleTNLaw.com
BRaybin@NashvilleTNLaw.com
*Attorneys for the Plaintiff*